McBRIDE, Judge.
Plaintiff, individually and for the use and benefit of her minor child, sues defendants (the employer and its insurer) for death benefits and funeral expenses under the Louisiana Workmen’s Compensation Statute. LSA-R.S. 23:1021 et seq. She claims that her husband, Edwin S. Fry, died on October 1, 1957, as a result of an injury received July 2, 1957, during the course and scope of his employment with the first-named defendant. She has appealed from the judgment which dismissed her suit.
The decedent was employed as a special representative of said employer, and it is undisputed that his employment is covered by the Workmen’s Compensation Statute. The job consisted of advertising and promoting the employer’s business, principally in regard to the chartering of special buses. His hours of employment were both irregular and long. He did considerable traveling by automobile. On July 2, 1957, he sustained a fracture of his right foot by the fall of a large automobile tire while engaged in his occupational duties, and two days later a leg-walking cast, weighing between 8 and 10 pounds, was applied to the injured foot and six weeks afterward the cast was removed and the decedent was medically discharged. Decedent worked regularly without loss of time from the date of the accident to his death. His death occurred on October 1, 1957, while he was driving his automobile on the way home from a visit to his doctor’s office, and there is no question the cause of death was myocardial infarction, which is a condition brought about because *32 of a restriction of the blood supply to a section o-f the heart muscle, resulting in necrosis of the muscle tissue. Simply stated, it was a case of heart failure.
Plaintiff carries the burden of showing a causal connection between her husband's accident of July 2, 1957, and the fatal heart attack of October 1. She pleads and contends that as a result of said accident decedent was compelled to wear the 8-10 pound leg cast during the hot weather of a New Orleans summer, and that the stress, and strain produced thereby, coupled with the physical exertions demanded by his long hours of work, resulted in severe physical and mental strain which caused decedent’s physical condition to deteriorate to a point where he suffered the massive heart attack of October 1, and therefore it can be said the accident was the precipitating cause of death.
Decedent had long been a sufferer of a heart condition. Dr. Milton H. Hattaway appeared as plaintiff’s chief medical expert, and we learn from his testimony that he had treated plaintiff since October 1950 for hypertension with disturbance in the rhythm of the heart with ectopic (extra) beats. In April 1952 decedent suffered from a respiratory tract infection. Dr. Hattaway described him as a “hypertensive person.” Dr. I. Tedesco, Jr., who applied the cast to decedent’s leg, was also called as a witness by plaintiff, but his testimony shows he was neither personally acquainted with decedent’s physical condition respecting the heart ailment, nor had he reviewed the decedent’s past medical history. Dr. Tedesco was not in a position to give an opinion as to whether the wearing of the cast produced the heart failure. He pointed out, however, that other factors besides the wearing of the cast could have raised the blood pressure and adversely affected decedent’s hypertensive condition.
•After the removal of the cast, decedent continued under the care of Dr. Hattaway for the heart condition. On September 9, 1957, he was complaining of pain beneath the substernal or chest bone. Dr. Hattaway diagnosed the trouble as stemming from the hypertensive heart disease and recommended that the decedent enter a hospital, but this advice went unheeded. Three days later Dr. Hattaway again saw decedent and thought his condition had improved. Again on September 23,1957, Dr. Hattaway saw the patient and thought his condition was better. The last time Dr. Hattaway saw decedent was on October 1, 1957, when he showed symptoms of having influenza, and Dr. Hattaway advised that he go home and take to bed. Decedent died on his way home.
Dr. Hattaway was asked whether the fact that decedent wore the cast for the six-week period, during which he carried on the usual and customary duties of his occupation, had any connection with the fatal heart attack. Dr. Hattaway answered: “1 think it is probably one of the precipitating factors.”
Counsel for plaintiff place great emphasis on the above statement by Dr. Hattaway, and the argument is made that under the settled jurisprudence of the state the statement made by the witness that “it is probably one of the precipitating factors” is sufficient to prove a connection between the accident of July 2, 1957, and the death occurring three months later. Counsel seem to have lifted the above assertion of Dr. Hattaway out of context, and we think that other statements made by the witness go to show that Dr. Hattaway cannot say whether the accident of July 2, or the wearing of the cast which it occasioned, did anything to hasten or bring about the death of decedent’s husband. To quote Dr. Hattaway:
“Q. As I understand your testimony, apparently any aggravations that he may have sustained or undergone, outside of his work, could have precipitated his condition?
“A. There are many things that could have precipitated it: physical, or emotional or mental — any type of precipitating factors could do it. How *33 ever, I do think it is one of the factors that may have caused the myocardial infarction.
“Q. You say ‘may have caused it’?
“A. Yes, sir.
“Q. It is not your opinion that it did?
“A. I have no opinion either way. I say it may have caused it.
“Q. You have no opinion either way?
“A. Because nobody knows.”
Further:
“Q. Would you have advised him (to go to a hospital) without knowing about his cast because of his condition ?
“A. I would have advised him because I was fearful he was going to have a stroke, and that was not because he was wearing a cast or was not wearing a cast.
“Q. Not because he had been wearing a cast?
“A. No, sir.
“Q. But because of his general condition?
“A. On account of his hypertension.
“Q. That would be your advice with any patient with that type of condition ?
“A. Yes, sir, I think it would be.
“Q. But not with regard to him wearing a cast on his leg?
“A. It didn’t have anything to do with this advice, with my advising him one way or the other.”
Dr. Samuel Nadler, a specialist in the field of internal medicine who had been furnished with a detailed history of the physical condition of decedent, appeared and testified as a witness on behalf of the defendants. After reviewing decedent’s history, he stated that he could find no connection between the wearing of the cast and the myocardial infarction from which death occurred. Dr. Nadler’s testimony shows that decedent’s medical history, which he reviewed, was quite detailed. He points out that decedent had been suffering from hypertension over a period of years. He particularly stated that the awakening of decedent from his sleep on the night of September 9, 1957, with complaints of a pain behind the breastbone, indicated a fast heart with elevated blood pressure. Dr. Nadler gave as his opinion that a person with a condition such as decedent’s would unquestionably have changes in the arteries to his heart and the flow of blood would diminish when these arteries narrowed. He stated that he thought the blocking of the blood vessel to the heart apparently occurred on or about October 1, 1957, or that it may have occurred as early as September 9. The witness further stated he believed that if a myocardial infarction occurred because of trauma or physical exertion, it should of necessity have occurred close to the time that the trauma or physical exertion was experienced and would have manifested itself within a period of two weeks at the farthest after the trauma or exertion. In other words, Dr. Nadler’s opinion was that the cast had nothing to do with the cardiac thrombosis else it should have occurred at the time decedent was wearing it soon after the trauma.
We think Dr. Hattaway’s testimony, taken in conjunction with the views expressed by Dr. Nadler, demonstrates clearly the alleged stress and strain caused from wearing the cast had nothing to do with the fatal attack. Dr. Hattaway saw decedent several times after he had been relieved of the cast, and stated he found his condition on those occasions to be about the same as it was when he saw decedent back in October 1950.
In some cases in this jurisdiction it was recognized that trauma usually associated *34 with strenuous duties may be sufficient to bring about the death of an employee with a diseased heart or with high blood pressure and warrants the awarding of workmen’s compensation, and counsel for plaintiff have cited us to several of such cases and argue that the same are controlling in this instance. We have read the cited cases and do not feel that the rationale thereof should govern this case in view of the facts and the evidence furnished by the medical experts found in the record. If the statement of Dr. Hattaway that the wearing of the cast was “probably” one of the precipitating factors of the heart stroke, as qualified by other portions of his testimony, can be accepted as proof of causal connection between the earlier accident and the subsequent death, such proof would indeed be of the most nebulous character. We think that the parts of the testimony of Dr. Hattaway quoted above are sufficient to dispel any thought that the doctor entertained the opinion that the stress and strain produced by the leg cast actually was the cause of death. We simply must conclude that plaintiff has not carried the burden imposed upon her of proving her case with that certainty the law requires.
It is a matter of common knowledge that heart attacks can prove fatal to sufferers therefrom who are not active, and that such attacks do occur while a person is peacefully in a sedentary position or even while asleep. In the case of Kraemer v. Jahncke Services, Inc., La.App., 83 So.2d 916 (certiorari denied), a SO-year-old worker suffered a fatal heart attack while dressing before leaving work. The evidence showed he had experienced chest pain and had stopped work for a while some three hours before his attack, but we held that the heart attack was not due to any aggravation caused by his work, and hence that his death was not compensa-ble. What was said in that case is particularly appropriate here:
“Under the circumstances of this case to hold that the heart attack was due to the aggravation of his work would in effect make the employer an insurer of the life of the deceased, which the Compensation Law never intends however liberally it is supposed to be construed in favor of the employee.”
For the reasons assigned, the judgment is affirmed.
Affirmed.