83 So.2d 916 (1955)
Mrs. Luise KRAEMER, Widow of Louis J. Lutz
v.
JAHNCKE SERVICES, Inc., and the Royal Indemnity Co.
No. 20611.
Court of Appeal of Louisiana, Orleans.
December 5, 1955.
Rehearing Denied January 3, 1956.
Writ of Certiorari Denied January 16, 1956.
*917 Melvin J. Duran, New Orleans, for plaintiff appellant.
Bienvenu & Culver, New Orleans, for defendant appellee.
REGAN, Judge.
The plaintiff, Mrs. Luise Kraemer, widow of Louis J. Lutz, instituted this suit against the defendants, Jahncke Services, Inc., and its liability insurer, The Royal Indemnity Company, endeavoring to recover compensation at the rate of $30 per week for a period of three hundred weeks, $650 for funeral expenses, 12% penalties and $1,000 attorneys' fees, for the death of her husband resulting from a "coronary insufficiency" suffered by him on August 21st, 1953.
The defendants answered and denied that there was any causal connection between the deceased's employment and his death.
From a judgment in favor of the defendants dismissing plaintiff's suit, she has prosecuted this appeal.
The trial judge thoroughly analyzed both the facts and the law applicable to this case in his written reasons for judgment which, in our opinion, encompass the issues so fully that we adopt them as our own.
"The record is replete with medical testimony concerning the difference between coronary insufficiency and coronary thrombosis. Four doctors testified, three for the plaintiff and one for the defendant. The facts of the case seem to be clear, and I find them as follows:
*918 "Deceased was 50 years of age, and had for five years been operating a diesel-powered crane unloading gondola cars and filling hoppers with sand and similar building material. Deceased was apparently in good health and, according to Dr. Brock, his family physician and a general practitioner, made no complaint about his health until two weeks or more before his death. He complained of pains over the chest extending into both arms, and shortness of breath when running for a street car, or when attempting minor household chores. The doctor had an electrocardiogram made which proved negative. Dr. Brock sent deceased to a heart man; and advised deceased to stop smoking, and to slow down; but did not advise him to quit his work.
"A fellow-employee, who was deceased's assistant on the crane, testified that the crane could be operated by simple movement of the levers; that on the day deceased died, while half through unloading a gondola car, suffered pain over his chest and stopped working for a while. In a few minutes he continued the unloading, which he completed about 3:30 p. m., the unloading taking about one hour. Deceased left the crane to perform some minor superintending duties around the plant. At 5:30 p. m., when deceased was in the dressing room washing and changing his clothes, he suffered an attack of coronary thrombosis and died almost instantly. The post mortem report gives the cause of death as coronary thrombosis.
"Plaintiff's wife testified that on the day before death her husband returned from work tired and sat on a stool in the kitchen. He complained of pains in his chest and down his arms, and suddenly became nauseated and vomited; wouldn't eat his dinner, and went to bed. She thought he had indigestion. The medical testimony is that vomiting is an objective symptom of coronary thrombosis. Plaintiff widow also testified that if deceased walked rapidly or ran for a street car he would get out of breath and experience these pains; that his mere attempt to lift a household Hoover sweeper would cause the pains.
"Deceased returned to work the next day at the usual hour in the morning and died that evening in the manner set forth above.
"Deceased had been operating the crane for five years. On the day of his death his duties were no different than they had been for the previous five years.
"Though the day in question was a mid-August day, the Government Climatological Report shows the sky was cloudy and the mean temperature about 75; winds were not severe or abnormal.
"There is considerable medical testimony as to the difference between coronary insufficiency and coronary thrombosis, but the pleadings and the death certificate shows death was due to coronary thrombosis; that coronary thrombosis occurs more frequently when people are idle than when they're active, and that attacks of coronary thrombosis may and frequently occur while a person is sitting down, or during sleep.
"While a heart attack is not an accident within the purview of the Workmen's Compensation Law [LSA-R.S. 23:1021 et seq.], yet if an employee has a pre-existing heart condition which is aggravated by his work, excessive heat, intense hard labor, sudden fright or attack, or any other stress that might aggravate such condition and cause disability or death, such resulting disability or death would be compensable under the Workmen's Compensation Law.
"It is now well settled that to constitute an accident within the meaning of our Workmen's Compensation Law in cases where the worker employee entails regular heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way while the laborer is performing his usual and customary heavy duties and disability results it is compensable. Stiles v. International Paper Co. [La.App.], 39 So.2d [635] 636, and the cases therein cited.
*919 "If excessive heat, heavy lifting or strain, although usual and customary, cause or contribute to physical breakdown of employee or accelerates its occurrence because of a pre-existing condition, a compensable accident occurs. Lampkin v. Kent Piling Co. [La.App.], 34 So.2d 76.
"In the more recent case of Sharp v. [Esso] Standard Oil Co. [La.App], 72 So. 2d [601] 610, discussing all the jurisprudence and a writ refused by the Supreme Court, recovery was permitted where a heart attack resulted from exertion, even though it occurred after the deceased had gone home.
"There is no doubt that recovery can be had in the case of a fatal heart attack even though the condition was progressive and pre-existing, if the last attack was brought on acutely as a result of overwork, pressure, fright, unusual exertion, even though actual death occurred at a later date and away from the employment.
"In Coleman v. Kellogg Lumber Co. [La. App.], 16 So.2d 657, the deceased was injured when he fell 20 feet from an elevated structure; suffered a heart attack at a later time, but the heart attack was superinduced by the fall.
"In the case of Johnson v. Zurich [General] Accident & Liability Ins. Co. [La. App.], 161 So. 667, death from heart failure caused by fright in the course of, and arising out of, employment was held to be compensable in the case where a night watchman died of heart failure caused by fright resulting in a holdup staged by practical jokers.
"The Compensation Statute limiting accidents to those `arising out of and in the course of employment', was to protect the employer against the possibility of becoming a mere insurer of his employee. See Wright v. Louisiana Ice & Utilities Co. [19 La.App. 173], 138 So. 450; Kirk v. [E. L.] Bruce Co. [La.App.], 190 So. 840. Nickelberry v. Ritchie [Grocer Co.] [196 La. 1011], 200 So. 330, and the following cases:
"Dortch v. Louisiana Central Lumber Co. [La.App.], 30 So.2d [792] 797; Lampkin v. Kent Piling Co. [La.App.], 34 So. 2d [76] 78; Roberts v. M. S. Carroll Co. [La.App.], 68 So.2d 693; Hemphill v. Tremont Lumber Co. [La.App.], 24 So.2d [635] 640.
"From the established jurisprudence a rule can be formulated that an accident must either cause or aggravate a pre-existent heart ailment before recovery can be had, and the aggravation must be due to some stress or strain, physical or mental, primarily suffered by the employee while performing his work due to excessive labor, fright, trauma, or any other cause that could aggravate the pre-existing condition; nor is it necessary that there be any great amount of physical strain or unusual exertion in the performance of the duties. It is only necessary that sufficient mental or physical strain occur during the performance of the duties, whether it be heart trouble or any other organic ailment. Nor is it necessary that the result of such stress or strain develop at the time or at the scene of employment if the stress and strain were sufficient to have caused the aggravation ultimately resulting in disability or death. The proof, of course, of the causal connection always rests with the plaintiff.
"In this case the deceased was doing the work that he had always done, which required no unusual exertion. He suffered a pain while performing the usual work of operating the crane unloading gondola cars, but after a short rest resumed his work and left his post. He was not engaged in the operation of the crane for practically three hours before he suffered his fatal heart attack while in the dressing room washing and dressing to go home. From the time he left his post on the crane about 3:00 or 3:30 p. m. until he suffered the heart attack at 5:30 p. m. in the dressing room he was doing ordinary superintending work around the plant.
"Of the four doctors who testified, one was a general practitioner and three heart specialists. While their testimony was elucidating *920 from an academic standpoint and explained the origin, cause and symptoms of coronary insufficiency and thrombosis, the salient features of their testimony are that coronary insufficiency or thrombosis causes death because the heart muscles are denied blood; that they are progressive diseases and sometimes suddenly manifest themselves, at times fatally, without any previous warning; that the deceased could have suffered an attack during the operation of the crane; that these coronary ailments prove fatal in a vast majority of patients who are not active, and can occur while a person is peacefully sitting down, or while asleep.
"There is no evidence that the coronary thrombosis was suffered for the first time while the deceased was operating the crane. To the contrary, the evidence is that he suffered the first attack away from work a few weeks before, and had a serious attack at home the previous evening. He did suffer a minor spell in the mid-afternoon of the fatal day while operating his crane, but after a temporary rest was able to resume and complete his work, finally dismounting his crane to do superintending chores around the employer's plant. It was three hours later that he suffered the fatal attack while dressing to go home at the close of work, nothing "more than he could have been doing at home calmly and serenely. See 20 A.L.R. 36 and 73 A.L.R. 511 for cases directly in point.
"Under the circumstances of this case to hold that the heart attack was due to the aggravation of his work would in effect make the employer an insurer of the life of the deceased, which the Compensation Law never intends however liberally it is supposed to be construed in favor of the employee.
"Under the circumstances there must be judgment for the defendant."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.