96 So.2d 357 (1957)
Mrs. Tennie Fason BROWN, Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
No. 8666.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1957.
Rehearing Denied July 25, 1957.
Writ of Certiorari Denied October 8, 1957.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
Booth, Lockard, Jack & Pleasant, Shreveport, for appellee.
GLADNEY, Judge.
This action was brought by Mrs. Tennie Fason Brown against the insurer of Dixie Fertilizer Company to recover workmen's compensation for the death of her husband, Griffin Barksdale Brown, who died of a coronary thrombosis on November 25, 1955. Payment of the claim was refused and the suit defended on the ground that the illness and death were unrelated to decedent's employment. After trial on the merits, judgment was rendered, awarding to plaintiff the statutory benefits as claimed, hence this appeal.
*358 The facts material to a resolution of the issues which arise in this case are readily established and leave no serious basis for dispute. Griffin Barksdale Brown at the time of his death was sixty-six years of age and had worked many years for the Dixie Fertilizer Company, and its predecessor. For several years prior to his death Brown suffered from a degenerative heart condition, apparently first noticed in January of 1952 by Dr. W. F. Drummond, who made a diagnosis of arteriosclerosis (thickening or hardening of the arteries) attended by claudication-tightened muscles. He was advised by his personal physician to obtain as much rest as possible, and was given a prescription to control his slightly elevated blood pressure, and to ease the pain experienced in his legs. Examinations were again made by the same doctor during 1953 and on the first of August, 1955. As a result of the examinations and clinical findings of Dr. Drummond, it was disclosed: the blood pressure of Brown was 130/95; later on in 1952, it was 130/95; again in 1952 it was 150/95; in 1953 it was 150/90; and in the first part of August, 1955, it was 170/100. On the last mentioned date it was determined by electrocardiogram the heart was not normal and was somewhat enlarged. The employee continued to work under circumstances which avoided unusual stress and strain.
On October 3, 1955, plaintiff was engaged in performing duties within the scope of his employment, when in cutting a pipe connected to a tank car recently emptied of a nitrogen solution, some chemical and gas spewed into his face, mouth, nasal pharynx and larynx, thereby causing acid burns for which he was hospitalized. Brown remained in the hospital until the 12th of October, during which time he was examined by Dr. Drummond and particularly as to the condition of his heart and lungs. He was permitted to return to his work on October 13, 1955. Dr. Drummond testified the chemical burns left no residual effect upon Brown's heart and lungs.
The employee, who was engaged in the capacity of general mechanic and millwright, charged with the maintenance and repair of the machinery at the plant, was assigned light duties after the discovery of his heart condition. He was assigned two helpers, John Haygood and Cook Jones who relieved Brown of any work entailing unusual lifting or strain. The evidence clearly indicates the employee did not thereafter engage in any activity during the course of his employment which required any heavy lifting or heavy work of a strenuous nature.
On the morning of October 13, 1955, Brown reported to work at the customary time and during that entire morning performed no work noticeably requiring unusual effort. After finishing his lunch shortly after 1:00 o'clock P.M. he attempted to fix a set of weighing scales which were out of order. These scales were attached to the fertilizer bag filling machine and served to measure the amount of fertilizer automatically fed into each bag. The indicating face of the scale where the moving needle registers was about chest high. The machine was not indicating the correct weight. In order to get into the face of the scales to make repairs it was necessary to remove the indicating face or plate, all of which was metal, and held in place by metal screws measuring approximately ¼ inch to 3/8 inch across the head and from two inches to three inches long. Only two screws held the plate in place.
From the time Brown reached the scales he was alone until Cook Jones arrived in response to Brown's message that he come and assist him in removing the screws. As to what occurred thereafter until Brown complained of a heart attack several minutes later, is established solely by the testimony of Jones. The decedent never afterwards made any statements which found a way into the record. Jones testified that when he arrived Brown was standing directly in front of the scales with a screwdriver and two small wrenches in his hand and his appearance exhibited nothing unusual or extraordinary. There was no *359 noticeable appearance of undue strain, frustration, temper, or pain. He gave an impression of his usual normal condition. One screw had been removed from the scales before Jones arrived and but one other screw remained for removal. Jones related the slot in the head of the screw had been "burred", was rusted over, but was not freshly "burred". He was unable to get the screwdriver to hold in the slot and the screw was removed by chiseling the head off. While Jones was so engaged, Brown walked over and stood in the door of the room and after so standing for several minutes he placed his hands upon his chest, informing Jones of hurting in the chest. Brown then left the room to go to the garage where he sat down for awhile and soon suffered a vomiting spell and was promptly taken to the hospital where he was attended by Dr. Drummond. His illness was diagnosed as a coronary occlusion. The employee's condition failed to improve and he died on November 25, 1955. An autopsy was performed which established beyond doubt his death was due to coronary thrombosis. We understand this to be the same as coronary occlusion.
Plaintiff's cause of action is set forth in the petition which avers decedent's death was caused by two accidents on October 3rd and 13th of 1955, which we shall refer to hereafter as the first and second episodes. Further, it is asserted the decedent had suffered from a pre-existing but non-work disabling condition of the heart, blood vessels and circulatory system, and that the condition was aggravated and worsened by his employment experiences on October 3rd and 13th, thereby causing death. Counsel for appellant argues that the decedent suffered no accident resulting in his death; that if there was an accident there was no causal relationship between it and his death; and finally, that plaintiff has failed to establish her case by a preponderance of the evidence and with legal certainty.
We are forced to conclude the accident of October 3rd has no causal relationship to the subsequent illness and death of the employee. We must necessarily rely upon the only medical evidence available consisting of the testimony of Dr. Drummond, the attending physician, and the hospital records produced at the trial. The doctor's testimony establishes without contradiction plaintiff's heart and circulatory system were undisturbed by the chemical burns.
The heart attack of October 13th occurred while plaintiff was engaged in the performance of duties arising out of his employment. This fact is not questioned, but a fatal weakness in plaintiff's case arises from a failure to produce evidence of probative value indicating stress or strain experienced by the employee in the performance of his work. The evidence so adduced impels us to hold plaintiff did not exhibit any objective signs of frustration, temper, excitement or undue stress and strain which could reasonably be inferred as aggravating a pre-existing heart condition. There is no evidence to the contrary in the testimony of Cook Jones. During the entire morning and the lunch hour of October 13th, Brown displayed no indication of tension or exertion. He was calm and normal in appearance and proceeded after his lunch hour to attempt the job of fixing the scales. When Jones arrived at the scales he found Brown with the same demeanor and appearance. Nor is there evidence from which it could be inferred the employee had made any effort requiring exertion. These are controlling facts disclosing beyond reasonable doubt that neither the removal of one screw just prior to his heart attack, nor the performance of any other duties on the morning of his attendance at work, had any causal relation to the heart attack and subsequent death of the decedent.
The record is replete with expert medical testimony given by six doctors, five of whom testified solely in response to hypothetical questions directed at establishing causal connection between the performance of the duties of Brown's employment *360 and his last illness. When propounded hypothetical questions embracing the true and real facts, the medical experts with unanimity denied any causal relationship between the employment of the deceased and the heart attack. A fundamental principle of the law of evidence is that expert testimony given in response to hypothetical questions predicated on a statement of unproven facts, has no probative value and should not affect the outcome of a case. The great preponderance of the medical testimony tendered is impressively unfavorable to the cause of plaintiff. In view of our resolution of the facts, we deem it unnecessary to further discuss at length the medical testimony, much of which was theoretical and irrelevant to the factual issues herein presented.
Counsel for appellee has invited our consideration of Sharp v. Esso Standard Oil Company, La.App. 1954, 72 So.2d 601; Kraemer v. Jahncke Services, Inc., La.App.1956, 83 So.2d 916; Clifton v. Arnold, La.App. 1956, 87 So.2d 386; and Roberson v. Michigan Mutual Liability Company, La.App.1956, 90 So.2d 465. Again we repeat, the determination of pertinent facts in the instant case negatives the existence of any strain from work or temperament having even the remotest connection with Brown's heart attack. Therefore, we find the foregoing authorities inapposite. These citations adhere to a general principle which has been formulated by our jurisprudence to the effect that in workmen's compensation cases where it is proven the work of the employee entails regularly heavy physical effort, it is not necessary in order for claimant to prevail that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way while the laborer is performing his usual and customary heavy duties and disability results.
By way of summary, it is our finding that the evidence in this case conclusively shows that Griffin Barksdale Brown died on November 25, 1955, as a result of a heart attack suffered on October 13, 1955, at a time when he was engaged in the performance of duties arising out of his employment; that the heart attack was not caused by frustration, excitement, stress or strain related in any way to the work he was performing, and that, therefore, the employee did not sustain an accident within the purview of the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq. so as to entitle his widow to the benefits of the statute.
From our findings as summarized above, it follows that the judgment from which appealed must be reversed and set aside, and it is now ordered that there be judgment rejecting the demands of plaintiff at her cost.