156 So.2d 468 (1963)
245 La. 33
Harold DANZIGER
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN and Mente & Company, Inc.
No. 46538.
Supreme Court of Louisiana.
June 28, 1963.
Rehearing Denied October 9, 1963.
*469 Bienvenu & Culver, P. A. Bienvenu, Timothy J. McNamara, New Orleans, for defendants-applicants.
Frederick J. Gisevius, Jr., Robert F. Shearman, John G. Discon, George M. Leppert, New Orleans, for plaintiff-respondent.
McCALEB, Justice.
This suit was instituted by Harold Danziger, formerly Executive Vice President of Mente & Company, Inc., a Louisiana corporation engaged in the manufacture of textile bags of various kinds, to recover from said corporation and its insurance carrier, Employers' Mutual Liability Insurance Company of Wisconsin, benefits of $30 per week for 400 weeks under the Workmen's Compensation Act (R.S. 23:1021-1351), on account of total and permanent disability resulting from an alleged accident which occurred in September of 1952.
The facts are these. Mente & Company had been operated for many years in the city of New Orleans by Isaac Rhea and his wife, Posey Rhea. Mr. Rhea was President and principal owner of the business and actively managed its affairs for many years. The Board of Directors was composed of Mr. and Mrs. Rhea and Mr. Danziger. In 1938, Mr. Rhea, having become ill, retired from the management of the Company. He and Mrs. Rhea moved to Asheville, North Carolina where they lived *470 until 1941, at which time they became residents of Memphis, Tennessee. During this period Mr. Danziger, who was head of the sales department, took over the active management of the corporation and remained in charge until the events hereinafter detailed.
By 1952 Mr. Rhea's health had deteriorated to such an extent that his death was expected at any time. However, Mrs. Rhea was apparently in reasonably good health. At about 1:30 o'clock a. m. on September 4, 1952, Mr. Danziger was awakened at his home by a telephone call from Mr. Rhea's sister, who informed him that Mrs. Rhea had suddenly died in Memphis. Upon receipt of this news, Mr. Danziger immediately began making arrangements to attend the funeral in Memphis with certain other employees and to provide for the continued operation of the business during his absence. He telephoned various employees to inform them of Mrs. Rhea's death and gave instructions in regard to their activities at the factory. He also arranged a conference of key personnel later in the morning and called his secretary, who was instructed to make plane reservations for those selected to attend the funeral. Shortly thereafter, the secretary, a Mrs. Mahen, telephoned Mr. Danziger to inform him that she could not contact the airport and, while speaking with him, she heard a peculiar noise and could get no further response from him. At this point Mr. Danziger's sister, Mrs. Falk, picked up the telephone and informed Mrs. Mahen that something had happened to her brother.
Mrs. Falk and her sister, Miss Edna Danziger, testified that Mr. Danziger became excited, shaky and nervous after receiving the news of Mrs. Rhea's death; that he, nevertheless, phoned other members of his staff and that, while he was speaking with Mrs. Mahen, he suddenly made a mumbling sound, as if he were trying to speak, but he became unsteady and dropped the phone. His personal physician, Dr. Manuel Gardberg, an internist, was summoned immediately and Mr. Danziger, who had suffered a paralytic stroke with loss of speech and paralysis in the right arm and leg, was taken to the hospital. After a while Mr. Danziger recovered some use of his limbs but never regained ability to speak. He was unquestionably totally and permanently disabled as a result of a cerebral thrombosis or cerebral embolism from the day he was stricken until suit was filed in 1954 and, thereafter, until his death on August 24, 1957 from a heart attack.
After his death, Mr. Danziger's sisters, Edna Gertrude Danziger and Miriam Danziger Falk, having qualified as his testamentary executrices, were substituted as parties plaintiff and, by amended petition, they claimed compensation for 258 weeks less credit of 37 weeks for unearned salary paid by the corporation before Mr. Danziger's death.
The theory of plaintiffs' case is that the stroke directly resulted from emotional shock or psychic trauma while Mr. Danziger was performing the duties of his employment and, therefore, it is a compensable accident within the meaning of the Louisiana Workmen's Compensation Act.
Conversely, defendants contend (1) that, as a matter of law, emotional shock or trauma is not an accident as defined by the Workmen's Compensation Act and (2), even if it is so classified, the "accident" did not arise out of or in the course of decedent's employment. In addition it is asserted that plaintiffs have not proved with certainty their claim that the paralytic stroke is attributable to the alleged shock.
The district judge sustained defendants position. However, on review, the Court of Appeal, Fourth Circuit, resolved that plaintiff had established by a preponderance of evidence that the emotional shock Mr. Danziger sustained upon receiving the news of Mrs. Rhea's death, coupled with his activity in notifying other employees and rushing arrangements to keep the plant operating during his absence precipitated the disabling attack of cerebral thrombosis; that this was an "accident" within the meaning *471 of the Workmen's Compensation Law and that it arose out of the employment (as it directly related to his job) and occurred in the course of his employment because Mr. Danziger was on duty, being subject to call, at all times. Accordingly, judgment was rendered in favor of plaintiffs for compensation in the sum of $7630 with legal interest thereon from judicial demand but the court, although it recognized in its opinion that defendants were entitled to a credit of $1110, neglected (evidently through inadvertence) to decree that this amount was to be credited against the total sum. See Danziger v. Employers' Mutual Liability Insurance Co. of Wis., La.App., 146 So.2d 682. We granted certiorari and the case has been argued and submitted for our decision.
A careful consideration of this matter has convinced us that the Court of Appeal erred in holding that the cerebral thrombosis suffered by Mr. Danziger was an "injury" or that the emotional shock, which allegedly caused the stroke, was an "accident" within the intendment of our Employers' Liability Statute. Hence, it is not of importance to our decision that we determine whether the so-called "accident" occurred during the course of Mr. Danziger's employment and that it had causal connection with and arose out of the employment. For purposes of this discussion it will be assumed that such is the case.
The sections of the Employers' Liability Act pertinent here are LSA-R.S. 23:1021 and LSA-R.S. 23:1031. The latter provides, in part:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated." (Italics ours).
Thus, in order for an employee to be entitled to compensation, he must receive a personal injury as the result of an accident. What, then, is an "accident" and "personal injury" within the purview of the statute?
Paragraph (1) of R.S. 23:1021 defines "accident" as follows:
"(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." (Italics ours).
Accordingly, if we assume that the news of Mrs. Rhea's death and the immediate activity of Mr. Danziger in connection therewith constituted an unexpected event which happened suddenly, it still cannot be regarded as an accident unless it produced at the time "objective symptoms of an injury". To ascertain whether a compensable injury was produced, we must examine paragraph (7) of R.S. 23:1021, which defines "injury" as follows:
"(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted." (Italics ours).
This provision is clear and explicit; hence it needs no interpretation. In restricting by definition compensable injuries to those affecting the physical structure of the body, it (paragraph 7) necessarily narrows the scope of the statute to traumatic physical hurts, evidence of which must appear in order for the event to be classified as an "accident" as defined by paragraph (1) of R.S. 23:1021. Consequently, then, the law of this State does not provide for the payment of compensation for disabling diseases resulting from emotion or psychic trauma upon which the claim in this case is founded. For, while compensation for diseases suffered by an employee *472 is recognized as compensable under our law, recovery is limited (save in cases of occupational diseases covered by R.S. 23:1031.1) as provided by paragraph (7) of R.S. 23:1021, to those diseases or infections which "naturally result" from a traumatic physical injury to the body in an accident arising out of and in the course of the employment.
However, in their brief to this court, counsel for plaintiffs profess that "Psychic trauma has long been recognized in Louisiana jurisprudence as a basis for a compensable accident" and, in support of this statement, they cite two cases of the Second Circuit Court of Appeal, viz., Johnson v. Zurich General Accident & Liability Ins. Co., 161 So. 667 (La.App.1935) and Roberson v. Michigan Mutual Liability Company, 90 So.2d 465 (La.App.1956).
In the first cited case plaintiff's husband, a night watchman, was the victim of a practical joke perpetrated by some officials of the town of Columbia, Louisiana. He was approached while on duty and told by members of the party that they had come to Columbia that night for the purpose of liberating three prisoners who were confined to the parish jail on a charge of shooting and wounding during an attempt to perpetrate a robbery. Apparently, the watchman was disarmed and carried across the Ouachita River bridge to a point outside the village. These acts frightened and alarmed the watchman and he either had a heart attack as a result, or a prior heart condition was aggravated to such an extent that he suffered an attack, and died of heart failure. The court held that, under the circumstances shown, the widow of the deceased was entitled to recover compensation, even though the heart failure was not due to a physical attack on the person of the watchman, because it was at least an assault upon him.
In our view, there may be justification in law for the decision, if the watchman was actually taken into custody by the pranksters, as is indicated by the statement of facts recited by the court. But, if there was no physical contact and the heart attack was precipitated exclusively by the watchmen's fright, then the decision is incorrect, being contrary to the provisions of the statute, which require that there be injury to the physical structure of the body of the workman in order for the resulting disability to be compensable.
The Roberson case, cited by counsel, is distinguishable from this one. That was an action by a surviving widow to recover workmen's compensation for the death of her employee husband from coronary thrombosis allegedly due to accidental injuries received during the course of his employment with an electric power company. The employee suffered the attack of coronary thrombosis while walking hurriedly to a fire at a home, for the purpose of checking on his employer's electrical service wires leading to the home. It appeared at the trial that the employee had a record of heart trouble and the doctors testified that, following his last attack, he had been advised to refrain from engaging in any severe or strenuous work or exercise and to do no heavy lifting. It was found that the employee, nevertheless, exerted himself excessively in view of his particular condition and that the extra stress and strain of hurriedly walking to the fire brought on the fatal attack of coronary thrombosis. In concluding that the death was compensable, the court relied upon a long line of authorities of the appellate courts, including this Court, which hold that, where the work requires physical effort and exertion and the employee's heart or other organ fails or suffers functional impairment causing disability while the employee is engaged in the performance of his usual and customary duties, it is an "accident" within the meaning of the compensation law and it is not necessary in such instances for the employee to show that the disabling "injury" was the result of unusual physical effort. See Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; *473 Fontenot v. Camden Fire Insurance Association, La.App., 124 So.2d 640 and other cases.
The jurisprudence applicable to disability from heart ailments and other vascular diseases constitutes an extension of the provisions of the Act to cover illness or death from "disease" so long as the workman is engaged in physical labor even though there is factually and, in reality, no "accident" or traumatic "injury" to the structure of the body as those terms are defined by paragraphs (1) and (7) of R.S. 23:1021, which we have quoted above. This extension of coverage has been accomplished by the courts under the guise of a liberal interpretation, to which the provisions of the statute are to be accorded, and the cases are so numerous and consistent on the subject that we now must regard the validity of the holdings to be a closed question.
However, certain limitations or ground rules, so to speak, have been applied by the courts in determining whether there has been an "accident" within the meaning and intendment of the law. First and foremost, it may be said that the vascular disease cases have been limited to employees who perform manual labor and recovery in such instances will not be permitted unless it is shown that the diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary laborious work. For example, in Nickelberry v. Ritchie Grocer Co., supra, recovery was denied where the proof did not show that the condition developed as the result of unusual strain, heavy lifting or the like, as it is necessary that the breakdown result from such labors in order that the disability can be said to have resulted from an "accident". Similar conclusions resulted from application of the same tests in Waller v. Stone & Webster Engineering Corporation, 42 So.2d 872 (La.App.1949); Wooten v. Toye Bros. Yellow Cab Co., 75 So.2d 447 (La.App.1955); Kraemer v. Jahncke Services, 83 So.2d 916 (La.App.1956); Brown v. Aetna Casualty & Surety Company, 96 So.2d 357 (La.App.1957); Keener v. Fidelity & Casualty Co. of New York, 96 So.2d 509 (La.App.1957); Prejean v. Bituminous Casualty Corporation, 125 So.2d 221 (La.App.1960) and Fontenot v. Camden Fire Insurance Assn., supra, (La. App.1961) citing with approval the observations of Professor Wex S. Malone contained in Section 256 of his treatise "Louisiana Workmen's Compensation Law and Practice" that, in cases involving diseases of the heart or blood vessels, it is essential to show by strong evidence that the disability was attributable entirely to the laborious work in order for recovery to be had.
Obviously, the holdings extending the provisions of our compensation act in the above described cases are inapplicable here. Mr. Danziger did not perform manual labor; he was a white-collar worker, specifically, a business executive. His duties were of a sedentary nature requiring no taxing physical effort. Accordingly, the paralytic stroke he suffered cannot be held to be an "accident" within the intendment of our Employers' Liability Act.
Finally, counsel for plaintiffs cite and rely on the four to three decision of the Court of Appeals of New York in Klimas v. Trans Caribbean Airways, Inc., 10 N.Y.2d 209, 219 N.Y.S.2d 14, 176 N.E.2d 714, where it was held that death of an employee from a heart attack occasioned solely by reason of mental disturbances and emotional strain resulting from employment was compensable.
It would ordinarily suffice to say that we do not agree with the majority of the New York Court under the facts there involved. However, it is apt to point out that the New York statute is susceptible of a much broader interpretation of coverage than our law. Paragraph 7 of Section 2 of the New York Workmen's Compensation. Law (see McKinney's Consolidated Laws of New York, Book 64) defines "injury" and "personal injury" to mean only accidental injury. Thus, since "accidental injury" is not further explained in the definitions the Courts are *474 accorded the right of determining the scope of the termi. e., whether a disability may be regarded as a consequence of accidental injury when it results from emotional as well as physical trauma.
On the other hand, the provisions of Paragraph (7) of R.S. 23:1021 of our Workmen's Compensation Statute, as hereinabove pointed out, defines "injury" and "personal injury" to include "* * * only injuries by violence to the physical structure of the body * * *". This plainly eliminates disabilities which stem entirely from emotional causes.
The judgment of the Court of Appeal is reversed and that of the district court is reinstated and affirmed at plaintiffs' costs.
SANDERS, J., dissents with written reasons.
SANDERS, Justice (dissenting).
The plaintiff suffered a cerebral thrombosis while engaged in the hurried activity of an employment emergency under an emotional shock of a severe nature. The majority denies recovery on the grounds that the cerebral thrombosis is not an "injury" and that it was not occasioned by an "accident", within the meaning of the Louisiana Workmen's Compensation Law. I cannot subscribe to this holding.
The prior jurisprudence has soundly established that cerebral thrombosis is a compensable injury under the Workmen's Compensation Law. Sepulvado v. Mansfield Hardwood Lumber Co., La.App., 75 So.2d 529; Roberson v. Michigan Mutual Liability Co., La.App., 90 So.2d 465; Brian v. Employers Casualty Co., La.App., 111 So. 2d 161.
While recovery has been denied for a thrombosis in a number of cases, the denial has been based on the lack of casual connection with the employment. Hence, these decisions confirm the premise that thrombosis is a compensable injury. Brown v. Aetna Casualty & Surety Co., La.App., 96 So.2d 357; Keener v. Fidelity & Casualty Co. of New York, La.App., 96 So.2d 509; Leonard v. Consolidated Rock, La.App., 101 So.2d 736; Prejean v. Bituminous Casualty Corp., La.App., 125 So.2d 221.
In holding that the circumstances shown do not constitute an accident, the majority opinion has apparently reverted to a restrictive definition of "accident" so as to require the immediate appearance of outward signs of physical hurt. In so doing, the opinion jettisons the previous jurisprudence. Injuries by strain, exertion, lead poisoning, exposure to poison ivy, sun burn, heat stroke, and fright, among others, have consistently been held to be of accidental origin, although no immediate outward signs of physical hurt appeared. See Johnson v. Zurich General Accident & Liability Insurance Co., La.App., 161 So. 667; Rochell v. Shreveport Grain & Elevator Co., La.App., 188 So. 429; Roberson v. Michigan Mutual Liability Company, La.App., 90 So. 2d 465; and Malone, Louisiana Workmen's Compensation Law and Practice, §§ 212-216, pp. 257-274.
The real issue in the case, as I see it, is whether the occupational activity (reception of the death message followed by hurried exertions) had a causal relation in a medical sense to the injury suffered. After a careful review of the evidence, the Court of Appeal found that the causal connection had been established by a preponderance of the evidence. I share this view.
In my opinion, the present decision has the effect of withdrawing the coverage of the Louisiana Workmen's Compensation Law from substantial areas of work-connected harm previously recognized as compensable.
For the foregoing reasons, I respectfully dissent.