STOULIG, Judge.
The City of New Orleans has appealed a judgment awarding a fireman maximum workmen’s compensation benefits for a heart condition that forced him to retire. His disability is admitted. What is at issue is whether plaintiff proved his heart condition was caused by or related to a job-connected “accident” so as to make it compensable under the Louisiana Workmen’s Compensation Act.
The facts are not disputed. When plaintiff joined the New Orleans Fire Department in 1938, he had been examined and certified as physically fit. It was not until 1961 that symptoms of angina first manifested themselves. He consulted a doctor, who diagnosed his^condition as angina pec-toris, and advised him to take a nitroglycerine tablet as a preventative measure before he participated in firefighting or engaged in any stress-producing activity.
Plaintiff testified he did not mention the heart problem to his employer because he had hoped to advance in the department. His condition apparently stabilized between 1961 and 1966 to the extent that he could perform the functions of a fireman without experiencing alarming symptoms. However, in 1966, the use of nitroglycerine in stress situations no longer worked as a preventative, because he began experiencing chest pains at every fire, which progressed in intensity as time went on. He recounted suffering chest pains at six fires during December 1966. The angina attack that precipitated his retirement occurred on January 25, 1967, as he was working at his desk on books he was keeping for a civilian defense program. After taking two nitroglycerine pills, he went directly to his doctor’s office from the firehouse.
*494 His physician, Dr. Jack Ruli, was qualified as an expert in internal medicine. In his opinion, plaintiff could no longer perform the duties of a fireman without jeopardizing his life after January 25, 1967, and this disability was permanent. He described the disabling condition as a “coronary artery disease” caused by a cholesterol buildup on the walls of the arteries, which impedes the flow of the blood to the heart muscle. The doctor testified this condition is sometimes aggravated by sudden stress and strain, because the emotional reaction to sudden pressure triggers a physiological change and the angina sufferer, already afflicted with partial blocking of his arteries, experiences even further construction in this crucial area. As a result the blood supply is further blocked from the heart muscle and it is this insufficiency that produces the pain or the angina attack. With this condition, Dr. Ruli opined, plaintiff could only continue on the job at great risk to his health because the fireman by the nature of his work is placed in one stress situation after another.
Plaintiff retired on January 26, 1967, on his doctor’s advice. Dr. Ruli unequivocally related the disabling condition to plaintiff’s job. He pointed out that the stress and strain to which plaintiff' was constantly subjected as a fireman accelerated the angina condition to the extent that it permanently disabled him from functioning as a fireman. The frequency of attacks in 1966 indicates his condition deteriorated during the last year of his employment, Dr. Ruli noted.
When plaintiff applied for retirement based on disability, Dr. J. T. Nix, the fire department physician, concurred in Dr. Ruli’s findings.
In brief reasons for judgment, the trial court stated it believed plaintiff suffered the numerous heart attacks he described as having occurred in 1966 and the attack in January 1967 at the firehouse. Under the manifest error rule of appellate review, we will not disturb this factual finding. The only testimony that cast some doubt on plaintiff’s declaration he had experienced six heart attacks in December 1966 is the statement by Dr. Ruli that the history he had taken from plaintiff on January 25, 1967, does not recite the December attacks occurred at fires. Dr. Ruli’s history does recite the attacks had occurred more frequently in 1966.
Why the history does not reflect plaintiff suffered six heart attacks while firefighting is not explained by the evidence. There is the possibility plaintiff was still hoping to remain with the department when he gave this history and concealed the occurrences or that the doctor for some reason made no notation of this complaint. While we think the latter is unlikely, it is of no moment because any explanation we might find more plausible to bridge this gap in the evidence remains nothing more than conjecture. In any event, this deficiency alone does not warrant our concluding the trial judge committed manifest error in finding as a fact the heart attacks occurred on the job as plaintiff stated.
Defendant contends that if we accept the facts as stated by plaintiff’s witnesses, he has failed to prove his disability is com-pensable because he has failed to connect his heart attack with any unusual or strenuous activity. In other words, he cannot relate his condition to an industrial accident.
As a general rule, workmen’s compensation benefits flow to a workman injured as the result of an accident arising out of the course and scope of his employment. See LSA-R.S. 23:1031. Usually the job-connected accident must result in objective symptoms of injury and injury for which compensation is provided is “ * * * injuries by violence to the physical structure of the body * * LSA-R.S. 23:1021(1) and (7). However, when the claimant seeks compensation for disability stemming from a heart condition these definitions no longer apply. The workman is not required to prove the oc *495 currence of an accident or a traumatic injury in vascular disease claims. In Danziger v. Employers Mut. Liability Ins. Co. of Wis., 245 La. 33, 156 So.2d 468 (1963), the Supreme Court reluctantly gave the force of law to numerous appellate opinions that judicially amended our compensation law to relieve the claimant of the need of proving an accident or traumatic injury. In so doing, it sanctioned the principle of compensating a claimant whose heart gave out on the job without.the occurrence of traumatic injury; however, it limited claims in this area to workmen whose organs gave way while performing strenuous physical activity.
In Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99 (1971), we discussed the vascular compensation claims at length and applied the Danziger rule. In that case, however, the workman suffered a heart attack after exerting physical effort in surroundings conducive to aggravating the heart problem and he died within hours of the attack suffered on the job.
In two other recent heart compensation cases, the heart attack resulting in disability to the workman was triggered by strenuous physical activity. In Guerrera v. City of New Orleans, 212 So.2d 223 (1968), a fireman suffered a disabling attack shortly after lifting a 45-pound hose. He retired immediately thereafter. In Garvin v. City of New Orleans, 243 So.2d 347 (1971), the fireman was compensated for a disabling heart attack, occurring at 11 p. m., that was triggered by strenuous activity in a training school the day the attack occurred. Clearly, under the Danziger rule, compensation was due.
In the instant case, however, the facts are distinguishable. According to plaintiff’s testimony, the last attack did not result from strenuous or laborious activity. He was sitting at a desk working on books. The attacks he experienced that would meet the Danziger test of strenuous activity occurred at least three weeks before he retired or consulted his doctor with complaints.
Thus we must decide whether an angina attack or a series of attacks induced by strenuous activity in the course of employment is compensable even if the complaint of disability is not made until three weeks thereafter, especially if the final angina attack occurs without physical exertion.
In the case of the fireman, and this holding is limited to firemen, we think compensation should be allowed. There is no doubt from the medical testimony that the angina condition was seriously aggravated by the six heart attacks suffered in December 1966 and that the heart deteriorated as a direct result of the stress and strain under which plaintiff labored. It is generally accepted that a fireman, as a result of the stress and strain of his work, is predisposed to vascular diseases and heart problems; our legislature acknowledged this fact in enacting LSA-R.S. 33:2581, which provides, inter alia, that heart disease in a fireman is presumed to have developed during employment if the disability manifests itself after five years of tenure.
In the light of this legislative recognition that heart ailments are in the nature of an occupational disease with firemen, we think it would be unrealistic for us to deny compensation to a workman who suffered six disabling attacks that undoubtedly aggravated his heart condition simply because three weeks intervened between the last attack resulting from strenuous labor and the final disabling attack.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.