LANDRY, Judge.
This appeal by Crown Zellerbach Corporation (Crown), is from judgment awarding its employee, Charles D. Griffin (Employee), workmen’s compensation benefits for total permanent disability resulting from a heart attack suffered by Employee within the course and scope of his employment by appellant. We affirm.
Two salient issues are presented herein, namely: (1) Did Employee sustain in “accident”; and (2) If so, was the accident and resulting disability causally related to Employee’s work.
Crown operates a paper mill in which Employee was employed as a millwright. Employee was a member of a multi-craft *85 union and had been an employee of Crown for approximately 15 years preceding the alleged “accident”. Employee’s duties consisted primarily of general maintenance work including the repair of machinery and equipment. Prior to the alleged accident, Employee had no history of a heart condition although he had been treated by his family physician, Dr. Harry S. Morris, for high blood pressure, for several years. On the morning of July 17, 1974, Employee reported to work, as usual, about 6:45 A.M. He was assigned to work with a fellow employee, Lynn Carney, on a “turnaround” of a paper making machine. We understand a “turnaround” to be a temporary shutdown of a unit for repair and cleaning preparatory to commencement of a new production cycle. The work involved the use of hand tools, pipe wrenches of varying sizes, and a mall. In the course of the work, Employee and Carney encountered some difficulty in removing a heavy chain situated inside a housing on the machine. Carney described the machine as being about 22 feet long and 20 to 25 feet wide. At about 9:00 A.M., Employee complained of severe chest pains and reported to the nurse’s station in Crown’s plant. The attendant Registered Nurse checked Employee’s pulse, respiration and blood pressure and found these vital signs within normal limits. Being familiar with Employee’s history of high blood pressure, and based on Employee’s complaint of a feeling of fullness, she prescribed antiacid tablets in the belief that Employee was suffering from indigestion. She advised Employee to return if the tablets did not afford him relief. Employee resumed work until about 2:30 P.M., at which time he returned to the nurse’s station in obvious acute distress from chest pains. The nurse summoned a company ambulance, called Dr. Harry S. Morris, Employee’s personal physician, and transported Employee to Dr. Morris’ office. Dr. Morris hospitalized Employee immediately. In the hospital, Employee’s chest pains persisted. On Friday, July 17, 1974, Employee became unconscious and remained so until the following day. Upon Employee regaining consciousness, his family retained a heart specialist who moved Employee to another hospital. After a few days treatment, Employee’s condition stabilized. Employee remained hospitalized about three weeks, and was then discharged to recuperate from the effects of a myocardial infarction which damaged the anterior surface (front) of his heart.
Dr. Morris’ record of Employee’s hospital admission contains a history of complaints of diarrhea, stomach cramps and weakness commencing Sunday, July 14, 1974. Employee steadfastly denied having related such a history to Dr. Morris and could not account for such information being contained in the record. Dr. Morris’ report also notes evidence of indigestion and heartburn.
On July 29,1974, Employee made application to Crown for sick benefits (non work related benefits) pursuant to union contract. Employee was paid such benefits for approximately six months.
Despite Dr. Morris’ report to the contrary, Employee testified he was not ill prior to experiencing chest pains on the morning in question. He did not recall having told Dr. Morris otherwise. He related that the chest pain began unexpectedly after he had been engaged in strenuous physical work which included swinging a mall. He also stated the temperature was so hot a blower fan was being used to afford relief from the heat. Upon experiencing pain, he went to the nurse’s station complaining of chest pain, not a feeling of fullness. He was given some tablets and instructed to return if the tablets did not bring relief. He continued work although the pain returned from time to time: At lunch time he did not eat but gave his lunch to a fellow employee. He continued work until about 2:30 P.M. when his chest pain became so severe he again reported to the nurse’s station. He conceded he knew he had had high blood pressure for some time but had no reason to believe he had a heart condition. He testified he was having no discomfort whatsoever when he left home for work on the morning he was stricken.
*86 The testimony of Lynn Carney corroborates that of Employee concerning the strenuous nature of the work in which they were engaged. Carney explained that removing the heavy chain from the machine was a task never previously encountered. He found it a most frustrating and difficult undertaking. He also stated there was some degree of emotional pressure involved in that a certain amount of time was allotted to accomplish the turnaround. He testified further that Employee made no complaints whatsoever on the day in question until the first incident about mid-morning. Carney confirmed that Employee’s chest pains continued after Employee’s first visit to the nurse’s station. At one time, Carney asked Employee if Employee thought the trouble was with his heart and Griffin replied he thought it was something he had eaten. Carney had not worked with Griffin on either the Monday or Tuesday preceding the incident.
Employee was hospitalized under care of Dr. Morris from July 17, 1974, to July 20, 1974, during which interval three electrocardiograms were taken, the last showing definite signs of a myocardial infarction. When this information was communicated to Employee’s family, a cardiologist, Dr. Virginia S. Thurmond, was retained to treat Employee.
On July 20, 1974, Employee was seen by Dr. David Wall, an associate of Dr. Thurmond. Employee was moved to a hospital in Baton Rouge and thereafter remained under the care and treatment of Dr. Thurmond. Initial examination by Dr. Thurmond disclosed that Employee was suffering from obvious symptoms of myocardial infarction. This diagnosis was based on Employee’s history, his complaints of chest pains, an arteriogram, and enzyme studies which showed positive damage to anterior portion of the heart which produced congestive failure, meaning fluid in the lungs. The arteriogram showed arteriosclerosis with several arterial blockages, including total blockage of one of the two main arteries supplying the left side of the patient’s heart.
Dr. Thurmond concedes that Employee’s arteriosclerotic condition was not caused by any condition of Employee’s work. She explained that the patient sustained an occlusion, or stoppage, which commenced when Employee began feeling ill and suffering chest pains on the afternoon in question. She also stated that a person in Employee’s state of health should, at all costs, avoid any form of physical, emotional or mental stress or strain because such circumstances can aggravate the arteriosclerotic condition and precipitate an occlusion, meaning arterial stoppage, which can result in an infarction, meaning damage to heart muscle tissue. Dr. Thurmond conceded that a person in Employee’s condition could suffer a heart attack under any circumstances, even while lying down, and that such an individual could function normally without being aware of his true condition. She was of the opinion that Employee’s condition was such that he should not have been doing the kind of work in which he was engaged. She added that had she examined Employee before the incident, she would have recommended that he not undertake such employment. Dr. Thurmond was emphatic in the view that stress or strain, physical, mental or emotional, can hasten a heart attack in a person in Employee’s condition. Dr. Thurmond also stated that there are many factors which may aggravate the condition Employee had. For this reason she would never attempt to say with absolute certainty what factor or factors triggered an occlusion. The clear import of her testimony is, however, that she is of the opinion it is at least reasonably probable that plaintiff’s occlusion resulted from the work in which he was engaged when stricken. Additionally, her testimony is unequivocally to the effect that plaintiff is totally and permanently disabled from doing the type of work in which he was engaged.
The question of whether a heart attack sustained in the course of one’s employment constitutes an “accident”, has been settled by numerous decisions holding that an employee may recover for a disabling heart attack and that the statutory *87 requirement of an “accident” is met if the employee can show that he performed duties requiring the use of physical effort which precipitated the attack. Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330 (1941); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968); Danziger v. Employers Mutual Liability Insurance Company, 245 La. 33, 156 So.2d 468 (1963); LeLeux v. Lumbermen’s Mutual Insurance Company, 318 So.2d 15 (La.1975). In LeLeux v. Lumbermen’s Mutual Insurance Company, above, the Supreme Court has apparently carried the “accident” test one step further. LeLeux involved the claim of the widow of a truck driver stricken with a cerebral vascular stroke while on the job. In holding that an “accident” was established, the Supreme Court stated:
“It is necessary only that the death or disability be precipitated by the usual actions, exertions, and conditions of employment. Ferguson v. HDE, Inc., supra, 264 La. 204, 270 So.2d 867 (1972), and Bertrand v. Coal Operators Casualty Company, supra.”
On the question of causal relationship between an accident and the employee’s work, in cases of this nature, we note the following language in LeLeux, above:
“The causal relation may be inferred when there is proof of an accident during the course of employment and an ensuing disability or death with no intervening cause. Gradney v. Vancouver Plywood Co. Inc., La., 299 So.2d 347 (1974); Johnson v. Travelers Insurance Co., La., 284 So.2d 888 (1973); Bertrand v. Coal Operators Casualty Co., supra.”
Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975), decided the same day as LeLeux, above, stated the following on the question of causal relation between an employee’s work and a heart attack which occurs on the job:
“The only remaining issue for determination is whether plaintiff proved by a preponderance of evidence that the fatal heart attack which occurred on the job was caused by decedent’s employment. Difficulty in proving causation arises from the fact that a pre-existing heart infirmity can produce disability at any moment irrespective of any outside influence. However, it is well settled that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when the accidental injury is caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Hence, it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. Further, it is not necessary that the accident resulting in disability or death be caused by extraordinary activities of the employee, or that said activities be the exclusive cause of the accidental injury. As previously stated, it is only necessary that the death or disability resulting from the accidental injury be caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Ferguson v. HDE, Inc. and Bertrand v. Coal Operators Casualty Company, supra.
In the instant case, the record reveals that decedent was engaged in manual labor as a machinist in the refinery at the time of the fatal heart attack. He was performing the usual and customary duties of his employment. We have no hesitancy in concluding that these activities were strenuous in nature. There is no dispute that decedent did, in fact, have a history of hypertension and that he did suffer a myocardial infraction resulting in immediate death while performing the duties of his employment. It is established by the medical testimony that the myocardial infarction suffered by decedent on the job which resulted in his death could have been caused or precipitated by the usual and customary actions and exertions of decedent’s duties as a machinist. Causal connection was thus clearly established by a preponderance of evidence in this case.”
*88 Applying the foregoing pertinent authorities to the case at hand we find that Employee sustained an accident in this instance and that the accident was causally related to his employment by Crown. The incident in question occurred on the job while Employee was in the course of performing his ordinary duties, which involved strenuous physical labor performed under some degree of stress and in rather warm temperature. The medical evidence discloses the reasonable probability that such conditions could have caused or precipitated the occlusion which Employee is shown to have suffered. Under these circumstances, Employee is entitled to workmen’s compensation benefits as decreed by the trial court.
In oral argument and brief, Employee requests penalties and attorney’s fees which were disallowed by the trial court. Since Employee has neither appealed nor answered Crown’s appeal, the relief requested cannot be granted, even if warranted. LSA-C. C.P. Article 2133; Arrow Construction Company, Inc. v. American Employers Insurance Company, 273 So.2d 582 (La.App. 1st Cir. 1973).
The judgment is affirmed, all costs to be paid by Crown.
Affirmed.