CHEHARDY, Judge.
Gladys Rayfield, in behalf of Veronica Ann Rayfield, Lisa Marie Rayfield and Sidney Rayfield, III, and Carretha Stokes Ray-field, individually, and in behalf of Cassan-dre Marie Rayfield, Sidney Rayfield, III, Julie Marie Rayfield and Nathaniel Reginald Rayfield, appeals a district court judgment in favor of defendant City of New Orleans dismissing the plaintiff’s suit as to that defendant.
In giving his reasons for judgment, the trial court judge stated:
“Having carefully reviewed and considered the evidence adduced on the trial of this matter, and especially the testimony of the physicians, the Court is of the opinion that the death of the decedent was not the result of an ‘accident’ as defined by the provisions of the Workmen’s Compensation Statute and more particularly La.R.S. 23:1021(1).”
We agree and affirm.
At a trial on the merits of the case, the widow of the decedent, Sidney Rayfield, Jr., testified that on the day of his death, September 1, 1976, he left for work as usual at approximately 8 a. m. to go to his job at City Hall, where he was employed in the Department of Collections, and nothing eventful occurred prior to his leaving. She stated he returned from this job at around 5:30 that evening, at which time he complained of having leg pains and chest pains, ate dinner and then left for his second job with a janitorial service.
Mrs. Rayfield said the next time she saw her husband was at approximately 10:45 that evening when he returned complaining of chest pains. About 30 minutes later the decedent left for the hospital and she later learned he had died on the way there.
It was established from the testimony of John McLemore, a coworker of the decedent also employed by the City, that Ray-field and he worked together on the afternoon of the day of his death removing parking meter housings which were in the way of construction work being done on North Rampart Street. He stated that the housings being removed by Rayfield, himself and another worker weighed approximately 30 or 35 pounds apiece. He said Rayfield never complained of having chest pains either on the day of his death or on any other occasion, but the decedent had said he had a problem with his leg.
McLemore also said that on the date in question the weather was hot and humid, and the men took one break sometime between the hours of 1:30 and 3:30 p. m. *1245 before they returned to the shop. He stated that on that morning he and Rayfield did not work together because they were collecting routes individually. McLemore also said he had been working with the decedent since approximately July of 1973 and Rayfield had come to the job some six months prior to that date.
Dr. John Ernst, an expert in the field of internal medicine and cardiology, after reviewing the coroner’s report, autopsy protocol, laboratory report and death certificate of Mr. Rayfield, as well as his medical report from Civil Service and a chart from the Veterans Administration Hospital, testified the decedent had severe coronary artery disease, had had a previous myocardial infarction, and had an acute myocardial infarction on the night of his death, which he stated occurs, in most cases, as here, when the man’s blood supply does not meet his demand for that particular time.
Dr. Ernst stated that because the patient complained of chest pain several hours prior to his death it would suggest something had occurred probably earlier in the day because of this supply and demand problem. Regarding Rayfield’s work activity, the physician stated that the history indicated to him the decedent had had a very heavy day, but he noted he did not know how he tolerated previously heavy days. He also said the work of unscrewing caps to parking meters and activities of cleaning and lifting would be of enormous stress to a man who had serious coronary artery disease.
Dr. Ernst testified that recent heavy physical jobs aggravated the decedent’s coronary artery disease and also said regarding the fact that he had chest pains on arriving home, he could not say definitely whether at that point an occlusion process had begun; however, he said it “probably” began at that time because of the autopsy report demonstrating he had occlusion hemorrhagic plaque and the beginning of damage at an “indeterminate” time. He also said the thrombus occurring in Rayfield’s case can form whether a person is working or not if the occlusion is severe enough; however, Dr. Ernst further testified he could say with medical certainty the arterio sclerosis was aggravated by the work the decedent did to the extent that the work was the cause.
Dr. R. W. Dhurandhar, Chief of Cardiology and Medicine at Touro Infirmary, whose specialty is cardio vascular disease, testified that in the present case he could not estimate when the decedent’s thrombosis formed. When asked if the activity the decedent had performed on the day of his death was the cause of what happened to him, he said this was a difficult question to answer “simply because the man was doing it every day.” He added a man who has severe coronary artery disease is always at the risk of sudden death.
Dr. Dhurandhar said sudden death through ventricular fibrillation can be caused by severe coronary artery disease, as in the decedent’s case and that hemorrhagic plaque began to grow, probably, due to plaque formation after sclerosis. He explained that this plaque, which had been in his vessels for some time, began to hemorrhage due to tiny vessels rupturing but this would not necessarily occur at work but could happen any time.
Dr. Dhurandhar also said he could not say whether the hemorrhagic plaque and thrombus preceded death by a very short time, but for the hemorrhage to become significant it must have happened just before or around the time Rayfield died. He added that the vessel was already severely narrowed and that it is possible some bleeding additionally produced further narrowing and blocked it off. He added, however, if it had blocked off while working he would have died, probably, immediately at work.
Dr. Dhurandhar testified there was nothing in the documents he reviewed to lead him to believe the decedent’s work precipitated this occlusion, and he added there is no strict correlation between physical exertion and heart attacks as there is physical exertion and angina pectoris. In regard to the correlation between Rayfield’s work and his death, the physician stated that if in his job, on the day he died, he had had more *1246 unusual exertion or if he had been under severe mental stress and there were causes for him to get highly upset, then he had aggravation of his condition due to work. He also said, however, if he was doing the same thing he was doing for five years then it was not possible to say his particular work did it. Furthermore, a slide examination showed no myocardial infarction or necrosis of heart tissue which would have been the evidence that indicated an attack occurred prior to the ventricular fibrillation.
The jurisprudence surrounding the issues in a case of this type was analyzed very well in Campbell v. Kansas City Southern Railroad Co., 297 So.2d 798 (La.App. 4th Cir. 1974), at 799-800:
“Plaintiffs must prove the existence of the causal connection between death resulting from heart failure and decedent’s employment activities. Our courts have frequently reviewed claims' under the Workmen’s Compensation Act for death benefits resulting from heart attacks. The law relative thereto is contained in Prater v. Liberty Mutual Insurance Company, 182 So.2d 805, 807 (La.App. 3rd Cir. 1966), where it is stated:
‘Our jurisprudence is now established that, in cases of this type, plaintiff bears the burden of proving by a preponderance of the evidence, as in any other civil ease, that there is a causal connection between the employment activity and death or disability resulting from a heart condition. Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Fontenot v. Camden Fire Insurance Association, 124 So.2d 640 (La.App. 3rd Cir. 1960); Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La. App. 3rd Cir. 1963). In the recent case of Guillory v. New Amsterdam Casualty Co., 244 La. 225, 152 So.2d 1 (1963) our Supreme Court, in discussing what is meant by preponderance of the evidence in compensation cases, states that “speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient * * In Bernard v. Louisiana Wildlife and Fisheries Commission, 152 So.2d 114 (La.App. 3rd Cir. 1963) this court said such proof must be by a “reasonable probability”, and that mere possibility is not sufficient. * * *’
In Holman v. M. L. Bath Company, Ltd., 226 So.2d 588, 589 (La.App. 2nd Cir. 1969) writ refused 254 La. 931, 228 So.2d 485 (1969), the court commented on the principal difficulty encountered in cases of this type:
‘Our jurisprudence is now settled that an employee may recover under the Workmen’s Compensation Act for disability resulting from a heart attack. The difficult problem in heart cases is defining the meaning of “accident” as used in the statute and whether the accident [exertion] caused the disability. If the employee is able to show that he performed duties requiring the use of physical effort which precipitated the heart attack [accident] our courts have decided the requirements of the statute have been satisfied. See Nickelberry v. Ritchie Grocer Co. (1941), 196 La. 1011, 200 So. 330; Prater v. Liberty Mutual Insurance Co. (La.App. 3 Cir. 1966), 182 So.2d 805; and Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968).’
This doctrine was recently reaffirmed in Fife v. Kaiser Aluminum & Chemical Corporation, 263 So.2d 351 (La.App. 1 Cir. 1972) writ refused, 1972.
“In Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468, 473 (1963) the court stated:
‘However, certain limitations or ground rules, so to speak, have been applied by the courts in determining whether there has been an “accident” within the meaning and intendment of the law. First and foremost, it may be said that the vascular disease cases have been limited to employees who perform manual labor and recovery in such instances will not be permitted unless it is shown that the diseased organ gives way or its function is impaired while *1247 the laborer is discharging his usual and customarily laborious work.’ (emphasis supplied)” [1]
Likewise the court also stated in Prim v. City of Shreveport, 297 So.2d 421, 422 (La. 1974):
“Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971); Herbert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965); Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131 (1946); White v. E. A. Caldwell Contractors, Inc., La.App., 276 So.2d 762 (1973); Richard v. Guillot, La.App., 271 So.2d 719 (1972); Nellon v. Harkins, La.App., 269 So.2d 542 (1972).”
A review of the record in its entirety fails to establish that the plaintiff carried the requisite burden in establishing an employment accident occurred and that it had a causal relationship to Rayfield’s death. The decedent’s death occurred a number of hours after he left his job with the City, he did not complain of chest pains at all to his co-employee during the working hours of that afternoon, and the work he did that afternoon was not established as having been any more heavy or stressful than that which he performed on any other workday for the past several years he worked with the City. This court cannot conclude that the decision of the trial court judge (that the death of the decedent was not the result of an “accident” as defined by LSA-R.S. 23:1021(1), was in error.
Accordingly, the district court decision dismissing the plaintiff’s suit is affirmed.

AFFIRMED.

. Danziger was overruled by Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972), only to the extent that Danziger held there can be no accident and no injury when the disability results solely from extraordinary mental or emotional causes.