219 So.2d 827 (1969)
Ivory KIRKHAM, Plaintiff-Appellee,
v.
CONSOLIDATED UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant.
No. 11159.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1969.
*828 Gahagan & Gahagan, Natchitoches, for defendant-appellant.
John M. Stewart, Arcadia, for plaintiff-appellee.
Before AYRES, BOLIN, and DIXON, JJ.
AYRES, Judge.
This is an action for workmen's compensation wherein plaintiff seeks to recover of his employer's insurer compensation at the maximum statutory rate provided for total and permanent disability, less compensation previously paid, and for penalties and attorneys' fees. There was judgment in plaintiff's favor as prayed for, except that his demands for penalties and attorneys' fees were rejected. Defendant appealed. Plaintiff has answered the appeal seeking an amendment of the judgment to include penalties and attorneys' fees.
The issues, purely factual in character, relate to the occurrence vel non of an accident and, in the alternative, to plaintiff's recovery from injuries which he may be found to have sustained. Defendant specially denied the occurrence of an accident in which plaintiff claims to have been injured.
During the month of April, 1966, plaintiff was employed by Pomeroy and McGowin Forestry Service, Inc., through its foreman, Curry Patton. This corporation was engaged in timber-stand improvement on a large tract of land in Bienville and Jackson Parishes owned by Davis Brothers Lumber Company, Ltd. This work consisted, in part, of the deadening, by the application of poison, of unmerchantable timber, notably cull oaks and other hardwoods. This is accomplished through the use of a "gun," an instrument some four or five feet in length containing a barrel filled with poison. The lower end is flattened and flared to form a cutting edge, immediately above which is an opening, in the form of a small hole, leading to the barrel containing the poison. As the cutting edge is thrust into the trunk of a tree, near the ground, a lever controlling the output of poison is "flipped" and a small portion or "shot" of the poison is released into the "cut" in the tree. This process is repeated until the entire circumference of the tree has been given applications of the poison. This "gun," when filled with poison, weighs about 35 pounds and, of course, has to be carried by the workman through the woods, the terrain of which, in this case, is shown to be rough and covered, in many areas, with a thick growth of underbrush and vines. This illustrates the nature of plaintiff's principal duties. He did, however, perform mechanical work on tractors and other equipment used by his employer in carrying out the work it had contracted to do.
Plaintiff was employed after a physical examination made by Dr. Marvin T. Green of the Green Clinic in Ruston. The doctor's report, or certificate, noted plaintiff had a disability of approximately 10%, obviously largely due to difficulties found that he was experiencing in his left knee. However, no torn or ruptured cartilage was noted at that time.
*829 Plaintiff was previously employed by Martin Timber Company at Castor, Louisiana. While so employed, on June 4, 1965, he received a crushing injury to his left knee while arranging the attachments to couple two trucks together. While holding the attachments, the driver of the forward truck let his foot slip off the brake, whereupon the truck suddenly thrust backward, catching plaintiff's knee between the attachments and inflicting severe injuries. For the injuries sustained in that accident plaintiff was hospitalized and placed in traction under the treatment and care of Dr. T. M. Oxford, an orthopedist of Shreveport. After release from the hospital, plaintiff was seen by the doctor regularly thereafter until he was discharged December 1, 1965. There were no fractures or dislocations in the knee, nor did the tests made disclose any tear or rupture of the semilunar cartilage. The test applied is known as "McMurrary's test." This test was again made by Dr. Ray E. King, another orthopedist of Shreveport, in the course of his examination of plaintiff under date of January 26, 1966. This test, likewise revealed no evidence of a tear or rupture of the cartilage.
It appears pertinent to observe that plaintiff pursued his work with defendant's assured from April to August, inclusive, of 1966. On trampling through the woods, becoming occasionally entangled in underbrush and sometimes stepping in a "stump hole," plaintiff's knee became swollen and stiff, and pain and discomfort were experienced. Nevertheless, he was able to continue with the performance of his duties of employment. Plaintiff testified, however, that on or about August 8, 1966, while engaged with Tommy Walsworth, a fellow employee, in repairing a tractor for their employer, he jumped off the tractor from a height of about three feet and that, in jumping from the tractor, he "wedged something in his knee." He indicated that he immediately told Walsworth of the occurrence of the accident. Walsworth, however, denied plaintiff made such a report to him and testified that he did not see plaintiff jump from the tractor. Plaintiff testified, also, that he had reported his accidental injury and discussed it with another fellow employee, Fred Lamkin; Lamkin denied that plaintiff did so.
That plaintiff did, however, report his accident and injury within a few days to his superior, Curry Patton, appears certain from the record; plaintiff so testified and Patton made a report of the accident. Moreover, plaintiff was referred by Patton to Dr. Green who was seen by plaintiff August 13, 1966. Dr. Green testified that plaintiff's primary complaint was of a painful knee, although he complained also of a painful ear and of a burning sensation in his stomach. Dr. Green's examination revealed a "boil" in plaintiff's left ear, a duodenal ulcer of the stomach, and a torn and ruptured cartilage of the knee. An examination later, by Dr. Roy H. Ledbetter, an orthopedic surgeon, corroborated Dr. Green's diagnosis with respect to plaintiff's knee. An operation performed September 20, 1966, confirmed the diagnosis. The cartilage was removed. Healing progressed as expected, but plaintiff was not made "whole" again. After two months, he resumed his employment, but continually experienced difficulties with his knee which grew progressively worse.
Nowhere in his testimony does Patton, plaintiff's superior, question the fact of the occurrence of the accident as claimed by plaintiff. On a basis of Dr. Green's finding of a torn and ruptured cartilage, plaintiff's testimony with respect to the occurrence of the accident and the immediate worsening of the condition of his knee, and from the fact medical testimony disclosed the nonexistence of a torn or ruptured cartilage of the knee following the first accident and immediately prior to his employment by defendant's assured, the trial court concluded plaintiff had amply established the occurrence of the accident and the injuries and disability resulting therefrom.
*830 Gauging these facts with principles long and firmly established in the jurisprudence of this State (1) that, in order for an employee to be entitled to compensation, he must receive a personal injury as a result of an accident (LSA-R.S. 23:1031; Danziger v. Employers Mut. Ins. Co. of Wis., 245 La. 33, 156 So.2d 468 [1963]; Guillot v. Winn-Dixie of Louisiana, Inc., 189 So.2d 52 [La.App., 4th Cir. 1966]); (2) that, in a compensation case, as in other civil matters, a plaintiff bears the burden of proof and must establish his claim to a legal certainty by a reasonable preponderance of evidence, and that speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment (Green v. Heard Motor Co., 224 La. 1077, 1078, 71 So.2d 849 [1954]; Roberts v. M. S. Carroll Co., 68 So.2d 689 [La.App., 2d Cir. 1953]); (3) that the burden of proof on claimant in a workmen's compensation case extends to the establishment of the occurrence of an accident to a legal certainty by a reasonable preponderance of evidence (Guillot v. Winn-Dixie of Louisiana, Inc., supra; Gisevius v. Jackson Brewing Co., 152 So. 2d 231 [La.App., 4th Cir. 1963writs denied]); (4) that the testimony of a claimant alone in a workmen's compensation case may be sufficient to establish the occurrence of an accident within the meaning of a statute only in exceptional cases where claimant's story is corroborated by surrounding facts and circumstances and where there is nothing in the record to impeach or discredit his testimony (Blair v. Procon, Incorporated, 188 So.2d 676 [La. App., 2d Cir. 1966]; Carter v. Casualty Reciprocal Exchange, 163 So.2d 855 [La.App., 2d Cir. 1964]); and (5) that, despite the liberality of the rules of evidence and of procedure generally applicable to compensation cases, such liberality has no application to the proof of the occurrence of an accident or that such occurrence caused disability (Carter v. Casualty Reciprocal Exchange, supra, and authorities cited therein), we experienced no difficulty in reaching a conclusion, as did the trial court, that plaintiff did sustain an accident producing a tear or rupture in the semilunar cartilage of his left knee which required its surgical removal.
With respect to plaintiff's ability vel non to continue the performance of his duties, which have been heretofore more or less detailed in regard to the nature of the work carried on, we may observe that practically all of the medical testimony is to the effect that plaintiff, despite the operation, sustained a permanent injury and an impairment in the use and function of his knee. All the doctors attributed a percentage of disability generally ranging upward to 20%. Dr. E. C. Simonton, an orthopedist who examined and treated plaintiff subsequent to his operation, expressed the opinion plaintiff had attained "substantial maximum recovery"; that while the condition of his knee would possibly remain static the condition could worsen. His opinion was that long hours of standing or walking would cause pain, swelling, discomfort, soreness, and stiffness of the knee, and that plaintiff would never be able to perform the type of work he was doing at the time he was injured, or work similar thereto. Dr. P. M. Davis, Jr., an orthopedic surgeon of Alexandria, was in substantial accord, as was Dr. Willis J. Taylor, an orthopedist of Shreveport. Dr. Green, on behalf of the defendant, who last saw plaintiff in January or February, 1967, testified that due to the disability which plaintiff had in his knee at that time, the agility in his lower extremities had been decreased.
With leniency shown by his superior, plaintiff continued in his employment until about April, 1967, when it was determined that he was unable to carry on his work. That determination by the employer's representative is corroborative of plaintiff's claim and convincing that plaintiff was in fact disabled.
From the facts disclosed by this record, it appears only reasonable to conclude that plaintiff can no longer perform the duties *831 of his former employment or other hard manual labor, and that he is therefore totally and permanently disabled.
We find no basis for the award of penalties and attorneys' fees. There was apparently an honest dispute as to the actual occurrence of the accident and the continuance of plaintiff's disability`following his operation. These were issues which defendant was entitled to litigate.
The judgment appealed is`accordingly affirmed at defendant-appellant's costs.
Affirmed.