DOMENGEAUX, Judge.
This is a workmen’s compensation suit wherein plaintiff-appellant Melvin H. Le-jeune sued his employer and the employer’s insurer, alleging that he is totally and permanently disabled. The trial court concluded that he had recovered from his injuries as of January 5, 1970 and judgment was rendered, awarding him compensation benefits from the date of the accident, November 26, 1968 until his recovery date. Plaintiff has appealed and the only issue before us is whether the trial court erred in awarding plaintiff compensation benefits only through January 5, 1970 rather than on a total and permanent basis not to exceed the statutory time limit.
Mr. Lejeune’s employer is a Mail Contractor for the United States Government Postal Service and plaintiff was employed by him as a route driver in which occupation he would deliver and pick up mail sacks at various Post Office locations.
On November 26, 1968, while lifting such a mail sack at the Post Office in Leesville, Vernon Parish, Louisiana, he sustained a back injury. Compensation benefits were paid to plaintiff by the defendant insurer, Allstate Insurance Company, from the date of the accident through September 1969 when payments were terminated based on medical reports received by it.
The record shows that plaintiff has experienced low back difficulties dating back to 1953 when he was injured while working for V & C Mud Chemical Company. A myelogram taken on December 4, 1953 showed a large defect at the level of the fourth lumbar intervertebral disc on the left side. Again, in 1955, plaintiff was injured while in the employ of Williams Drilling Company and his case was diagnosed at that time as a ruptured inter-vertebral disc at the L-4 and L-5 left low back region. Again, later in 1955 he injured his low back in a commercial accident. In all three instances he participated in workmen’s compensation settle *718 ments with his employers. Disc surgery has never been performed on plaintiff.
At the time of the accident upon which this appeal is based, plaintiff had been working in his above-mentioned capacity for some seven weeks. Prior to that time he had worked as a route man with a linen service company for some two and one-half years in which employment he picked up and delivered linens, towels, uniforms, etc., making between 30 and 40 stops per day. The bundles which he handled varied in weight, but when soiled linen was picked up, frequently in a damp state, the bundles weighed between 40 and 70 pounds. Before that time, but since his accident of 1955, he had worked in various occupations including that of a service station attendant, taxi driver, creamery employee, rice farm laborer, and for approximately 10 years, he worked as a care taker which necessitated his attending to a pecan orchard, a flower garden, collecting rents, etc. Since his accident of 1968, and commencing from 10 or 11 months thereafter, he has worked intermittently as a service station manager and the record indicates that he has not performed heavy work to any extent, excepting to remove, repair and re-install tires on trucks and cars on occasion. To complicate his situation, he suffered a heart attack on March 6, 1970, which admittedly is not connected with his claim herein, and from which he was recuperating as of the date of the trial, October 5, 1970.
Mr. Lejeune described his accident of November 26, 1968 and the circumstances attendant thereto as follows: He had left Lake Charles in the mail truck on his regular route, stopped at the DeRidder Post Office, unloaded the mail, and proceeded to Fort Polk to unload more mail. From there he went to Leesville and as he swung a mail bag onto his shoulder, he experienced a sharp pain in the back. He rested a short time, the pain subsided and he dragged the remaining hags on the ground to their depository at the post office. He proceeded in his mail truck toward another post office stop at Many, Louisiana and as he was driving he says that he “ * * * noticed my legs went completely out, I had no control, no use of my legs at the time * * * ” He allowed the mail truck to coast off to the side of the road and was ultimately picked up by two Fort Polk soldiers who brought him to the Broyles Clinic in Leesville, Louisiana. He was seen there by Dr. S. J. Jones, remained at the clinic for two days, returned to his home in Lake Charles, and was admitted to the Lake Charles Memorial Hospital on November 30, 1968, seen by Dr. Charles M. Anderson and Dr. Norman P. Morin and released from the hospital on December 19, 1968. He was subsequently examined by Dr. Robert C. L. Robertson and Dr. Richard W. Levy.
Plaintiff contends that he has continued to suffer pain in his low back and leg and that he is unable to perform manual labor because of such pain and instability.
Dr. Jones, a general practitioner, examined plaintiff on November 27, 1968 and found muscle spasm in the paravertebral muscles. He concluded, from the history given him of a previous injury, that plaintiff was suffering from nerve root irritation of the lumbosacral spine secondary to muscle spasm. The doctor indicated that he found little objective symptoms but actually treated him with sedatives and suggested that he see a back specialist. The doctor did not consider the muscle spasm an objective finding because, he says, the spasm could be generated voluntarily. He did say, however, that spasm occurs frequently when the nerve is irritated or a muscle is sprained. On the question of muscle spasm, Dr. Charles Anderson suggested that muscle spasm was an objective finding and that it is virtually impossible to feign this type of spasm.
Dr. Anderson, also a general practitioner, saw the plaintiff in Lake Charles Memorial Hospital on November 30, 1968, treated him conservatively with med-icaments, physical therapy, and traction, and also ordered a back brace. He con *719 tinued to see him during his stay at the hospital through December 19, 1968 and thereafter saw him intermittently after his discharge from the hospital through April 15, 1969. It was Dr. Anderson’s opinion, based on plaintiffs history and his findings, that said findings were compatible with a ruptured intervertebral disc in the L-4, L-5 area. He found muscle spasm initially which subsequently subsided and improved. As of April 15, 1969, it was Dr. Anderson’s opinion that the plaintiff was still disabled from doing heavy work and was still suffering from the ruptured disc. Dr. Anderson examined plaintiff again on September 28, 1970 and his conclusion then was that the claimant’s symptoms were compatible with those of a ruptured disc and that he was disabled from performing heavy work which disability would continue until the disc was surgically corrected. In view of his having reviewed plaintiff’s history and the diagnosis of a ruptured disc dating .back to 1955, he thought that plaintiff’s condition as of September, 1970 was a continuation and aggravation of his pre-existing condition.
While plaintiff was still in the Lake Charles Hospital, Dr. Anderson called in Dr. Norman P. Morin, an orthopaedic surgeon for consultation.
Dr. Morin examined plaintiff on two occasions, first on December 3, 1968 and again on December 30, 1969. At the first examination Dr. Morin found moderate muscle spasm on both sides of the fifth lumbar spinous process and first sacral spinous process.
The right sciatic nerve was painful and tender. He viewed x-rays which had been ordered by Dr. Anderson and he found them essentially normal. As of the first examination, he concluded that the plaintiff had a disc-like syndrome which was sustained in the accident of November 26, 1968 and that he was still disabled. He suggested conservative treatment. In his examination of December 30, 1969 he found no muscle spasm but some tenderness on the left side when the sciatic nerve was pressed. Repeat x-rays were negative. He opined that plaintiff was still disabled and suggested that he be referred to a neurosurgeon for further evaluation and treatment. Believing that there was evidence of nerve root irritation, he thought that a neurosurgeon would be the type specialist to perform surgery if same was indicated. Although he based his opinion on plaintiff’s prior history, he nevertheless thought that his findings also were indicative of back disability and that his recent injury resulted in permanent disability, barring surgical intervention.
On January 5, 1970 plaintiff was examined by Dr. Robert C. L. Robertson, a neurosurgeon of Houston, Texas. Dr. Robertson opined that plaintiff had a possible mild nerve root compression but no neurological deficiencies that would be disabling as far as he could tell from his examination. He thought the possible mild nerve root compression was not clearly demonstrated upon neurological examination and was not convincing, but that in view of his history he would have to relate it to the November, 1968 injury. Dr. Robertson admitted that there was a threat to plaintiff’s health because of the large defect shown on the myelogram taken in 1953, but that such a threat was present long before the 1968 accident involved herein.
Finally plaintiff was examined on August 20, 1968 by Dr. Levy, a neurosurgeon. Dr. Levy performed a neurological examination for the low back and legs and had x-rays taken. He found no muscle spasm and normal x-rays. He found no neurological disability, was of the opinion that plaintiff did not have a ruptured intervertebral disc or any other basis for his complaints. He opined that neurosurgery was not indicated, that plaintiff had no disability and that he could do any work at all without restrictions.
Except for the myelogram which was performed on plaintiff back in 1953, no *720 further myelography has been performed on him.
The trial judge concluded that plaintiff was disabled as a result of the November, 1968 accident and remained disabled through January S, 1970. His opinion that plaintiff had recovered from his injuries was based primarily on the testimony of the two neurosurgeons, Dr. Levy and Dr. Robertson and he also recognized that Dr. Morin, the orthopaedist, requested that plaintiff be referred to a neurosurgeon for evaluation and treatment. It is evident from a review of the medical testimony of Drs. Jones, Anderson and Morin that their conclusions as to permanent disability were based more on history than objective findings.
In workmen’s compensation cases, as in other cases, plaintiff bears the burden of proof, and he must establish his claim by a reasonable preponderance of the evidence. Singleton v. Fireman’s Fun American Insurance Companies et al., La.App., 250 So.2d 239; Kirkham v. Consolidated Underwriters Insurance Co., La.App., 219 So.2d 827; King v. Employers Mutual of Wausau, La.App., 220 So.2d 201.
Applicable also is the rule that the factual findings of the trial judge are entitled to great weight on appeal, and his conclusions as to the facts should not be disturbed unless found to be clearly erroneous. Huntsberry v. Millers Mutual Fire Insurance Co., La.App., 205 So.2d 617.
We are reluctant to reverse the trial court in the face of the contradictory medical evidence in this case inasmuch as we fail to find clear error on its part. Although the testimony of the treating physician Dr. Anderson and that of the orth-opaedist, Dr. Morin, supports plaintiff’s argument on the question of total and permanent disability, we cannot say that the trial judge erred in accepting the positive testimony of the neurosurgeon, Dr. Levy, that plaintiff was well as of August 20, 1969 and of the other neurosurgeon, Dr. Robertson who, in effect, stated that he could not arrive at a conclusion that plaintiff was suffering from any neurological deficit.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.