BOLIN, Judge.
Gladys Lee Pearson brought this workmen’s compensation suit against her former employer, Texas Eastern Transmission Corporation, for benefits for total and permanent disability allegedly caused by an accident occurring on April 8, 1970, while she was performing her duties as maid for her employer. From judgment rejecting her demands she appeals.
In written reasons dictated into the transcript the district court found plaintiff failed to prove by a preponderance of the evidence that she sustained an accident during the course and scope of her employment which caused the subsequent disability. We disagree with this conclusion for the reasons hereinafter set forth.
The issues are whether plaintiff proved she was accidentally injured on the job and, if so, the extent of her injuries.
It is undisputed plaintiff reported to her supervisor an onset of severe pain on the night of April 21, 1970, and was told to report to the first-aid nurse the following morning, which she did. The nurse’s report, dated April 22, 1970, contains the notation that Gladys Pearson reported she became nauseated and suffered severe pain at the waistline of her back at about 8:00 p. m. the previous evening and called the supervisor who made a report and sent her home. Both Miller’s report and that of the nurse reflect plaintiff told them the only reason she could give for her backache was from picking up a big roll of maps on April 8th.
Gladys was sent to the company physician, Dr. F. L. Price, who found some muscle spasm, prescribed muscle relaxants, and recommended she use heat and rest at home until pain or muscle strain subsided. This information was transmitted to the nurse who noted it on her report on the same day.
Both Dr. Price and his associate, Dr. Pittman, who assisted Dr. Price in examining plaintiff, testified plaintiff told them she was picking up some large maps at Texas Eastern on approximately April 8th at which time she hurt her back “a little bit but it didn’t bother her too much, so she didn’t say much about it, but that it had progressively bothered her more and more”. These doctors testified x-rays were taken of the lumbar spine and the findings were negative for fractures or dislocations, as was the leg-raising test for nerve-root involvement. Pittman examined plaintiff on two or three subsequent occasions and found her slightly improved but recommended continued rest and medication for muscle relaxation.
*157 Plaintiff testified that, on April 8, 1970, she was carrying some maps in a tall can on the twelfth floor to the elevator in order to take them down to the seventh floor. When she got to the elevator she twisted around and threw them down on the floor and when she attempted to straighten up she could not because she had a sharp pain in the middle of her hack. She further testified it continued to hurt but she worked the rest of the night and eventually she did not feel any pain. However, she stated when she went back downstairs she felt it again, although she said nothing to anyone because “she is not a person who complains”. Between the eighth and the twenty-first her back kept hurting and “it would hurt and leave.” On the evening of the twenty-first at about 9:00 p. m. she was emptying trash on the twelfth floor. She picked up a trash can and again experienced sharp pain in her back. Another maid came into the room and saw she was obviously in pain and plaintiff asked her to get Mr. Miller, the building superintendent, who came up to the twelfth floor. Mr. Miller told her to report to him in the basement when she finished her work, which she did. Plaintiff testified Mr. Miller filled out a report and she signed it.
Plaintiff testified further that on the morning of May 3, 1970, she was attending church and when she attempted to stand up to go home she experienced severe pain, causing her to fall back upon the bench. The pain was so severe she was taken by ambulance to the emergency room of a local hospital where she was seen by Dr. Price.
Dr. Price testified he made an orthopedic examination in the hospital and found a positive reaction to the straight-leg-raising test on the left leg, which indicated she might have nerve-root involvement. The following day plaintiff called him and he referred her to Dr. Long, an orthopedic surgeon who prescribed a myelogram from which he determined there was a possible disc injury. Shortly thereafter Dr. Long performed surgery and found the disc at the L-4-5 level was bulging and causing pressure on the nerve root and removed the disc.
Defendant called only three witnesses, the supervisor, Mr. Miller, a substitute nurse, Mrs. Graves, and the building manager, Mr. J. W. Wiseman. Mr. Miller’s accident report, dated April 21, 1970, was introduced into evidence and reflects that plaintiff came in the evening of April 21st complaining with her back. In the space reserved for inserting the date of the accident Miller had written “4/8/70 or 4/9/70”. The report form contained a blank provided for a description of the accident in detail as to what happened, the cause, and how it happened, wherein Miller had written: “Gladys said she could have lifted or carried too heavy load of throw away maps.” In the space provided for the type of injury he had written: “Could be strain.” In his testimony Miller corroborated this report and his testimony varied from that of plaintiff’s only in minor details, she having stated she told him positively she hurt her back on April 8th.
The testimony of Mrs. Graves was of little help in determining the ultimate question of whether plaintiff suffered a back injury on April 8th. She testified, in accordance with her report, that Mrs. Pearson called for cold capsules on April 14th but made no complaints about her back. Mr. Wiseman stated the report form filled out by Mr. Miller was the same type of accident report form used by the company since he had been building manager, which was a little over fifteen years.
The testimony of Dr. Long relative to the disc injury is clear and unequivocal and establishes with certainty that following the incident of May 3rd plaintiff had a protruding disc which required surgery. The testimony of the other witnesses leaves no doubt Gladys experienced severe pain on April 21st. Thus, the sole question is whether the disc injury was caused by or was the result of an accident on the job, *158 specifically whether the incident of April 8th actually happened.
We are well aware of the rules, concisely summarized in Kirkham v. Consolidated Underwriters Insurance Company, (La.App. 2d Cir. 1969) 219 So.2d 827, which provide that plaintiff has the burden of proving the occurrence of an on-the-job accident resulting in an injury causing disability to perform his usual and customary duties. However, the Kirkham case is notable in that the court found plaintiff had established the occurrence of the accident by his own uncorroborated testimony.
We have found nothing in the testimony of any of the witnesses in the instant case, or in the circumstances surrounding the alleged occurrence, which casts doubt on plaintiff’s integrity or points to any real discrepancy in her testimony. On the contrary, we consider the series of incidents of pain which led to discovery of the protruding disc and operation were so closely connected in time as to render plaintiff’s explanation not only plausible but convincing. Although she failed to report the April 8th incident until April 21st, we conclude Gladys Pearson has adequately established that on April 8, 1970 she suffered an injury while in the course and scope of her employment with defendant.
We turn now to the question of whether plaintiff is totally and permanently disabled by reason of this injury and subsequent operation. Dr. Long, the orthopedic surgeon, who performed the operation, was the only medical witness testifying as to her residual disability. He stated plaintiff’s post-operative recovery was uneventful although she complained of stiffness and he advised her to wear a brace for support. She was last seen by Dr. Long on July 17th, at which time he thought she would be able to resume work on August 1st. However, she did not return to work. He testified he could not express her disability in percentage terms but that her back would never be like it was originally. He predicted she would have difficulty in picking up heavy objects during the course of her work as a maid. He stated several times during his testimony she would just have to try it to see what happened before he could express an opinion on her continued disability. Since the last time he examined plaintiff was on July 17th he was unable to say whether she had in fact recovered from the stiffness caused by the operation. He stated she definitely was not "better after he operated on her than she was when born.” He insisted he could make no prognosis of disability without a “trial run” and stated she might even be a hundred percent disabled. He did state affirmatively her back was obviously never going to be like it was originally.
We conclude that on the date of the trial plaintiff was totally and permanently disabled within the meaning of the Workmen’s Compensation Statute. Under the provisions of Louisiana Revised Statutes 23:1221(2), in effect at the time of the accident, plaintiff is entitled to compensation at the rate of sixty-five percent of her wages during the period of disability, not to exceed five hundred weeks. It is clear from the record plaintiff regularly worked 29 hours a week and was paid $1.-70 per hour. Plaintiff’s weekly compensation is computed in accordance with the formula set forth in Louisiana Revised Statutes 1021(11) providing:
“(11) 'Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; * * * ”
By applying this formula we arrive at the sum of $68 as weekly wages, 65% of which is $44.20, the amount plaintiff is entitled to receive each week.
The record establishes that hospital and medical expenses total the sum of $1,788.-47, which plaintiff is entitled to recover.
*159 The trial judge properly denied recovery of penalties and attorney’s fees since it was not shown defendant was arbitrary or capricious in failing to pay workmen’s compensation prior to suit.
For the reasons assigned the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Gladys Lee Pearson and against Texas Eastern Transmission Corporation awarding plaintiff compensation at the rate of $44.20 per week beginning April 21, 1970, and continuing during disability, not, however, to exceed 500 weeks, with legal interest on each weekly installment from its maturity until paid, together with $1,788.47 for hospital and medical expenses, with legal interest thereon from judicial demand until paid.
It is further ordered, adjudged and decreed that defendant pay all costs including expert witness fees for Drs. Fred L. Price, E. Blaine Pittman, and Warren D. Long, Jr., which are hereby fixed in the amount of $100 each.